**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 15-23947-CIV-LENARD/GOODMAN**

DAVID LOUIS BERKOWER and
SZNOL BERKOWER,

      Plaintiffs,

v.

USAA CASUALTY INSURANCE
COMPANY,

      Defendant.

_____/

**OMNIBUS ORDER DENYING SUMMARY JUDGMENT MOTIONS**

Ranting against "the rules" is a view sometimes urged by poets, public speakers, entertainers and political protestors. Sometimes, criticism of the rules morphs into a view that urges *violation* of the rules. To provide but one example, the hard rock/heavy metal rock group "Kiss" musically proclaimed that "rules are made to be broken" in its "It's My Life" song.[1]

So the "break-the-rules" philosophy might be perfectly appropriate for a T-shirt slogan or for rock 'n' roll lyrics, but it is almost always an ill-advised strategy when opposing a summary judgment motion filed in federal court. Unfortunately, Plaintiffs David Louis Berkower and Sznol Berkower ("Plaintiffs") significantly violated the

---

[1]      Released on the 5-CD collection of recordings. KISS, *It's My Life*, *on* THE BOX SET (Mercury Records).

1

applicable procedural rules when opposing the summary judgment motion filed by Defendant USAA Casualty Insurance Company ("Defendant").

Moreover, the fundamental violation occurred even after Plaintiffs were provided with additional time in which to file their opposition response. As outlined below, the Court could grant summary judgment in Defendant's favor on a default basis given Plaintiffs' failure to comply with the clear-cut, unequivocal rules for summary judgment motions.

However, the Undersigned has chosen to follow the often-quoted remarks of former professional baseball player Vernon Louis "Lefty" Gomez, sometimes known as "Goofy Gomez." As a left-handed pitcher who played for both the New York Yankees and the Washington Senators from 1930 to 1943, Gomez often remarked, "I'd rather be lucky than good."

In the instant case, Plaintiffs are lucky that the Undersigned has adopted a flexible view and spent considerable time reviewing Plaintiffs' statement of undisputed facts in connection with their own summary judgment motion when evaluating Defendant's summary judgment motion, which Plaintiffs did not adequately respond to because they failed to follow the rules. However, for reasons explained in more detail below, Plaintiffs' counsel is required to personally pay $1,750 to Defendant for the unnecessary attorney's fees Defendant incurred in connection with Plaintiffs' violation of the applicable rules.

## I.      Background

Plaintiffs filed a summary judgment motion and a statement of undisputed facts. [ECF Nos. 111; 112]. Defendant filed opposition responses to the summary judgment motion and the statement of undisputed facts. [ECF Nos. 139; 140]. Plaintiffs then filed a reply. [ECF No. 145].

Defendant also (and first) filed its summary judgment motion and a statement of undisputed facts. [ECF Nos. 109; 110]. Plaintiffs filed an opposition response, but failed to initially respond to Defendant's statement of undisputed facts. [ECF No. 141]. Defendant filed a reply. [ECF No. 144]. Plaintiffs subsequently filed a motion for leave to file its response to Defendant's statement of undisputed facts and attached its proposed response. [ECF Nos. 166; 166-1]. The Undersigned granted the request, designated the proposed response to Defendant's undisputed facts as the actual response [ECF No. 166-1], and permitted Defendant to file an amended reply. [ECF No. 177]. Defendant filed its amended reply. [ECF No. 181].

United States District Judge Joan A. Lenard referred all pretrial matters to the Undersigned [ECF No. 21], with the consent of both parties [ECF No. 20]. For the reasons discussed below, the Undersigned denies Plaintiffs' summary judgment motions and denies Defendant's summary judgment motion.

## II.      Plaintiffs' Procedural Defect

Plaintiffs failed to submit a response to Defendant's statement of undisputed facts submitted in conjunction with Defendant's summary judgment motion. Plaintiffs then filed a motion seeking leave to submit a response to Defendant's statement of undisputed facts -- months after Defendant had submitted its statement of undisputed facts. [ECF No. 166]. Nonetheless, the Undersigned granted (over Defendant's objection) Plaintiffs leave to submit the untimely response and designated the proposed response attached to the motion for leave as the response to Defendant's statement of undisputed facts. [ECF No. 177].

But Plaintiffs' response to Defendant's statement of undisputed facts is inadequate because Plaintiffs challenged Defendant's alleged undisputed facts by merely indicating that the specific numbered fact at issue was "disputed." [ECF Nos. 166-1]. They did not, as required, **refer to the actual record evidence** which purportedly supports their claim that the undisputed facts asserted by Defendant are in fact actually disputed.

Additionally, Plaintiffs' statement of undisputed facts filed with their own summary judgment motion is similarly inadequate because they did not always support each statement with specific references to evidence. [ECF No. 112]. As Defendant points out in its response to Plaintiffs' statement of undisputed facts, allegedly undisputed facts #22 and #24 do not include citations to record evidence. [ECF

4

No. 140]. Moreover, Defendant also contends that Plaintiffs incorrectly cited to record evidence which does not in fact support the assertions.

Under Local Rule 56.1, the Undersigned has authority to deem as admitted all the facts submitted by Defendant in support of its arguments. As the plain language of Local Rule 56.1 states, "(a): **A motion for summary judgment and the opposition thereto** shall be accompanied by a statement of material facts as to which it is contended . . . there does exist a genuine issue to be tried[.]" S.D. Fla. L.R. 56.1(a) (emphasis supplied). The local rule requires that such statement "(1) Not exceed ten (10) pages in length; (2) Be **supported by specific references** to pleadings, depositions, answers to interrogatories, admissions, and affidavits on file with the Court; and (3) Consist of separately numbered paragraphs." *Id.* (emphasis supplied).

Failure of a respondent to file a statement of disputed facts, in the format as required above, causes "[a]ll material facts set forth in the movant's statement" to be "deemed admitted unless controverted by the opposing party's **statement**[.]" S.D. Fla. L.R. 56.1(b) (emphasis added).

Plaintiffs' response to Defendant's statement of undisputed facts merely listed the paragraphs they dispute. [ECF No. 166-2]. Plaintiffs did not explain why -- and they surely did not include specific references to record evidence (such as deposition testimony or interrogatory answers).

The lack of compliance is so clear-cut that the Court undoubtedly has the discretion to deem Defendant's facts admitted and then enter summary judgment in Defendant's favor, as Plaintiffs' defective response essentially leaves the Court with "the functional analog of an unopposed motion for summary judgment." *Lugo v. Carnival Corp.*, 154 F. Supp. 3d 1341, 1343 (S.D. Fla. 2015) (admitting facts from defendant's undisputed material facts statement after reviewing the record based on plaintiff's violation of Local Rule 56.1); *Regions Bank v. 62' Ocean Sport Fish*, No. 13–20966–CIV, 2014 WL 4055707, at *2 (S.D. Fla. Aug. 14, 2014) (admitting undisputed facts in plaintiff's statement supported by the record based on defendants' violation of Local Rule 56.1).[2]

---

[2]    Specifically, the Court in *Regions Bank* explained:

> In the instant case, both parties moved for summary judgment. The defendants did not comply with the requirements of Local Rule 56.1. While the defendants filed their own statement of disputed facts (*see* Defendants' Statement of Disputed Facts (DE# 88–1, 7/1/14)) and the Defendant's Statement of Undisputed Facts (DE# 78–2, 5/5/14) in support of their summary judgment motion, the defendants did not file a statement of material facts *in opposition* to the plaintiff's summary judgment motion which corresponded with the paragraph numbering scheme used by the plaintiff as required by S.D. Fla. L. R. 56.1(a). Therefore, the undersigned will deem admitted those facts in the plaintiff's Statement of Material Facts (DE# 84, 6/2/14) which are supported by the record. S.D. Fla. L.R. 56.1(b). "[E]ven where an opposing party neglects to submit any alleged material facts in controversy, the court must still satisfy itself that the evidence on the record supports the uncontroverted material facts that the movant has proposed." *Hoff v. Steiner Transocean, Ltd.*, No. 12–22329–CIV, 2014 WL 273075, at *5 (S.D. Fla. Jan. 24, 2014) (citing *Reese v. Herbert*, 527 F.3d 1253, 1268–69, 1272 (11th Cir.

When a party properly complies with Local Rule 56.1, it is relatively easy for a court to determine whether there is a genuine disputed issue of fact. Basically, all a court needs to do is to look at the opposing statement of material facts on a paragraph-by-paragraph basis, see whether any paragraphs are designated as disputed and then make note of the evidentiary reasons for the dispute. When a party does not comply with the Local Rule by referencing record evidence, however, then it is exceedingly difficult for a court to discern if there is an actual factual dispute concerning a specific paragraph. A court needs to review the entire opposing memorandum and exhibits to determine whether there is a sound factual basis for determining that a point deemed factually undisputed by the movant is actually disputed. A barebones, conclusory statement that an undisputed fact is "disputed" does not make it so, which is why the local rules requires evidentiary record citations.[3]

---

2008); *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.,* 363 F.3d 1099, 1103 n. 6 (11th Cir. 2004)).

2014 WL 4055707, at *2 (emphasis in original).

[3]      As stated in *Levey v. Wells Fargo Bank, N.A.*:

"To the extent any party fails to direct the Court to the record evidence in support of its asserted facts (or its reasons for disputing an opposing party's asserted facts) contained in *each* sentence, the Court will not consider those assertions in deciding the Motion. *See* Fed. R. Civ. P. 56(e)(4); S.D. Fla. L.R. 56.1(b) ("All material facts set forth in the movant's statement filed and supported as required . . . will be deemed admitted unless controverted by the opposing party's statement, provided that the

Reviewing the record without the benefit of the required record references can be an arduous process, and, in any event, generates unnecessary work for the Court and its staff.

However, in recognition that the opposition response and Plaintiffs' own summary judgment motion (with its accompanying statement of undisputed facts) contain evidence which can be viewed as rebutting Defendant's material facts statement, this Court will take a more-conservative approach and will consider Plaintiffs' rebutting (albeit procedurally improper) evidence.

Before proceeding to that analysis, however, the Undersigned wants to also highlight that in addition to creating more work for the Court, Plaintiffs' procedural defects also created more work for Defendant. Defendant had to take the time and

---

Court finds that the movant's statement is supported by evidence in the record.").

The Local Rule serves "to make review of summary judgment motions less burdensome to the Court." S.D. Fla. L.R. 56.1 cmts. (2008); *see also Carolina Acquisition, LLC v. Double Billed, LLC,* No. 07-61738-CIV, 2009 WL 1298362, at *1 (S.D. Fla. May 8, 2009). It is also consistent with determining the appropriateness of summary judgment. *See Phillips v. City of Dawsonville,* 499 F.3d 1239, 1241 (11th Cir. 2007) ("summary judgment is appropriate *when no genuine issue of material fact exists* and the moving party is entitled to judgment as a matter of law.").

Case No. 14-22164-CIV, 2015 WL 12533125, at *1 (S.D. Fla. Feb. 17, 2015) (underlined emphasis supplied; italicized emphasis in original).

energy to highlight and challenge Plaintiffs' deficiencies in the statement of undisputed facts and Plaintiffs' tardy response to Defendant's statement of undisputed facts.

Plaintiffs' rule violation and procedural failings have caused Defendant to unnecessarily incur additional attorney's fees and costs, and their procedural irregularities have also caused the Court to undergo significant additional work (to comb through the record to determine which assertions are indeed actually disputed). Although the Undersigned is not imposing an attorney's fees award against Plaintiffs or their counsel for unduly burdening the Court, I can enter a fees award for unduly burdening *Defendant*. Therefore, the Undersigned enters a fees award against Plaintiffs' counsel in the amount of $1,750.

The award is being entered against only **counsel,** and not his clients. Plaintiffs' counsel shall not directly or indirectly pass on this fees award as a costs item or reimbursement entry to the clients. Plaintiffs' counsel shall, by April 11, 2017, pay the fees award to Defendant. Also, Plaintiffs' counsel shall, within two days of making the payment, submit to the Undersigned's e-file inbox (goodman@flsd.uscourts.gov) -- but not on CM/ECF -- an affidavit or declaration confirming that he in fact made the payment.[4]

---

[4]     The Undersigned does not deem this expense-shifting award to be a sanction or the imposition of discipline. Instead, it is simply a cost-shifting or fee-shifting mechanism used. Thus, this Order would not require Plaintiffs' counsel to answer yes if ever asked (e.g., by a prospective employer, by an insurance carrier, by a judicial

### III.     Factual and Procedural History

Plaintiffs filed this action against their homeowners' insurance carrier, Defendant, in connection with alleged damage to their home. [ECF Nos. 1-1; 17]. Plaintiffs' Amended Complaint has one cause of action for breach of contract remaining because the parties agreed to abate one count and the Court dismissed the other two counts. [ECF Nos. 17; 99].

Defendant issued a homeowner's insurance policy to Plaintiffs for their residence. [ECF Nos. 17; 112; 140]. Plaintiffs previously sustained a loss at their same property for which Defendant tendered payments for the repairs. [ECF Nos. 110; 166-1].

More recently, Plaintiffs, through Stellar Public Adjusting Services ("Stellar"), reported to Defendant that a below-slab leak had occurred at Plaintiffs' property, causing water damage. [ECF Nos. 110; 110-2]. Plaintiffs filed a claim with Defendant to report that a loss occurred. [ECF Nos. 112; 112-2; 140].

Mrs. Berkower testified that, on the day of the loss, one of her children flushed the master bathroom toilet and water actively overflowed from the toilet for several

---

nominating commission, by a client, or by a prospective client) if a judge had ever sanctioned or disciplined him.

However, in order to avoid the issues arising the last time the Court required counsel to pay a fees award in this case, the payment required by this Order must be **delivered** to Defendant's counsel by the deadline. Thus, placing a check in an envelope and dropping the envelope into a law firm's mailroom after business hours and causing the check to be delivered by regular mail several days after the deadline expired will be patently inadequate to comply with this Order.  Instead, the check must be delivered to the law office of Defendant's counsel on or before 5:00 p.m. on April 11, 2017.

minutes. [ECF Nos. 110; 166-1]. She testified that water simultaneously backed up from the master bathroom tub, shower, and sink. [ECF Nos. 110; 166-1].

After receiving notice of Plaintiffs' claim, Defendant sent Norman Vespi, an independent adjuster from David Morse & Associates Insurance Adjusters and Investigators, to Plaintiffs' property. [ECF Nos. 110; 112; 140; 166-1]. Mr. Vespi inspected the property in the presence of Rami Boaziz from Stellar. [ECF Nos. 110; 166-1]. At the time of Mr. Vespi's inspection, Mr. Boaziz and Mr. Vespi observed what was believed to be discoloration of the travertine (which, at the time, Mr. Vespi thought was "marble") flooring in the master bathroom toilet room. [ECF Nos. 110; 166-1].

The parties agree that Mr. Vespi is not a licensed plumber, engineer, general contractor or other licensed professional, nor is he otherwise qualified to inspect sanitary drain lines or any other part of a plumbing system or to render opinions as to causation. [ECF Nos. 110; 110-8; 166-1]. The parties also agree that, based on the information available to Mr. Vespi at that time, Mr. Vespi reported to Defendant that the loss was caused by a broken drain line underneath the concrete slab which caused the master bathroom toilet to back up and that "water damage" to the master bathroom door frame and discoloration of the travertine tile was observed. [ECF Nos. 110; 110-8; 166-1].

Defendant does not dispute that Mr. Vespi prepared an estimate of the cost to repair the damages to the property in the net amount of $103,179.64. [ECF Nos. 110-2;

140]. Plaintiffs, however, additionally assert that Mr. Vespi concluded that the loss was *covered* under the subject policy. [ECF No. 112].

All 4 One Plumbing, Inc. prepared a report after visiting Plaintiffs' property. [ECF Nos. 112; 140]. All 4 One Plumbing, Inc.'s report made no mention of a "break" in the master bathroom drain line. [ECF Nos. 110; 166-1]. Rather, All 4 One's report noted that a video camera inspection of the master bathroom drain line revealed a "sag" in the line. [ECF Nos. 110; 166-1].

Defendant alleges that, after reviewing Mr. Vespi's report and photographs, it did not agree that the claimed damages were water damages caused from a toilet overflowing and did not agree that there were in fact any damages. [ECF Nos. 110; 110-2]. Because of this, Defendant determined that it needed to re-inspect the property. [ECF Nos. 110; 110-2].

This lawsuit alleging breach of contract commenced before Defendant conducted the re-inspection. Plaintiffs filed their complaint in state court on September 11, 2015. Defendant re-inspected the property on May 23, 2016 with its two experts: Donald Dunn, a licensed plumber from My Plumbing Co., and Richard T. Fortune (from Rugbeaters of Florida, Inc.). Plaintiffs sought to strike both of these experts [ECF No. 113], but the Undersigned denied the motion [ECF No. 187].[5]

---

[5]     Defendant similarly filed a motion to strike Plaintiffs' Expert, Kenneth Hecht. [ECF No. 142]. The Undersigned granted the motion and struck Plaintiffs' expert. [ECF

Defendant's statement of undisputed facts includes the experts' findings. As previously discussed, Plaintiffs did not properly dispute these findings and the Court could deem the facts as admitted. A review of Plaintiffs' own statement of undisputed facts filed in conjunction with their summary judgment motion does not show an allegation by Plaintiffs that these experts' opinions are incorrect.

In sum, Defendant's experts' opinions conclude that the alleged damages to Plaintiffs' property are not consistent with a backup and overflow of a toilet. Moreover, Defendant's experts find that the alleged damages were not even caused by water. Instead, the alleged damages, according to Defendant's experts, are from long-term wear and tear, poor maintenance, and inherent variations in shade, color and characteristics of the flooring.

Mr. Dunn, Defendant's expert plumber, reviewed Mrs. Berkower's deposition testimony concerning various bathroom appliances flooding at once. He determined that, based on the physical height, depth and the layout of the plumbing fixtures, combined with the characteristics of fluid dynamics, the water could not have flooded the way Mrs. Berkower described.

Further, Mr. Dunn determined that the type of plumbing issue described would have been caused by a systemic blockage. This type of blockage would not have cleared itself and would have required a sewer snake or similar mechanical device to clear the

No. 188]. As such, the Undersigned has disregarded any references to Mr. Hecht in the summary judgment motions and the associated filings.

13

systemic blockage. Review of All 4 One's report does not show evidence of a systemic blockage, nor evidence that All 4 One cleared a blockage during its visit to Plaintiffs' property.

Subsequently, Defendant sent Plaintiffs a letter indicating it had determined that Plaintiffs' claim was not covered under the policy. [ECF No. 110; 166-1]. Defendant sought leave to amend its answer in order to assert newly-realized affirmative defenses, withdraw some previously asserted affirmative defenses, and amend other defenses to include additional facts that further support them. [ECF No. 69]. The Undersigned granted that request. [ECF No. 83].

## IV.   Legal Standard

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal citation and marks omitted). If the movant establishes the absence of a genuine issue, then the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

For issues on which the opposing party will have the burden of proof at trial, the movant can prevail by merely pointing out that there is an absence of evidence to

support the non-movant's case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986).

"By its very terms, this standard provides that the mere existence of *some* alleged factual

dispute between the parties will not defeat an otherwise properly supported motion for

summary judgment; the requirement is that there be no *genuine* issue of *material* fact."

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986) (emphasis in original). "As to

materiality, the substantive law will identify which facts are material. Only disputes

over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment. Factual disputes that are irrelevant

or unnecessary will not be counted." *Id.* at 248. Likewise, a dispute about a material fact

is a "genuine" issue only "if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Id.*

An issue of fact is genuine "if the record taken as a whole could lead a rational

tier of fact to find for the nonmoving party." *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646

(11th Cir. 1997). In applying this standard, the district court must view the evidence and

all factual inferences in the light most favorable to the party opposing the summary

judgment motion. *Id.* at 646 (internal citation omitted).

Nevertheless, the non-movant cannot defeat summary judgment by: (a)

"rest[ing] upon mere allegations or denials," *Woolsey v. Town of Hillsboro Beach,* 541 F.

App'x 917, 919 (11th Cir. 2013); (b) "simply *saying* the facts are in dispute," *Latele

Television, C.A. v. Telemundo Commc'ns Grp., LLC,* No. 12-22539, 2014 WL 7272974, at *7

15

(S.D. Fla. Dec. 18, 2014); or (c) relying on "evidence that is merely colorable or not significantly probative," *Fields v. Gorman*, No. 09-61466, 2010 WL 3769396, at *3 (S.D. Fla. Sept. 3, 2010). "Rhetoric and attorney argument are no substitute for record evidence." *Latele*, 2014 WL 7272974, at *7.

To the contrary, the opposing party has a duty to present affirmative evidence in order to defeat a properly supported summary judgment motion. *Anderson,* 477 U.S. at 252. Indeed, "Rule 56 mandates the entry of summary judgment, upon motion, against a party who fails to make a showing sufficient to establish an element essential to his case on which he bears the burden of proof at trial." *Schechter v. Ga. State Univ.,* 341 F. App'x 560, 562 (11th Cir. 2009) (citing *Celotex*, 477 U.S. at 322).

Conclusory allegations, subjective beliefs, opinions, and unsupported assertions are insufficient as a matter of law to withstand summary judgment. *See Mayfield v. Patterson Pump Co.,* 101 F.3d 1371, 1376 (11th Cir. 1996) (finding that conclusory allegations and conjecture cannot be the basis for denying summary judgment).

Additionally, the parties here must prove that they are entitled to summary judgment as a matter of Florida law because this is a diversity case in which the rule of decision is supplied by Florida law. Furthermore, the insurance policy was issued to Plaintiffs in Florida and therefore Florida law governs its interpretation under the principle of *lex loci contractus. Sparta Ins. Co. v. Colareta*, 990 F. Supp. 2d 1357, 1362-63 (S.D. Fla. 2014).

Because this is a diversity case, we are bound to follow the decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise. *Silverberg v. Paine, Webber, Jackson & Curtis,* 710 F.2d 678, 690 (11th Cir. 1983). Florida district court decisions bind all Florida trial courts in the absence of inter-district conflict. *Pardo v. State,* 596 So. 2d 665, 666 (Fla. 1992) (internal citation omitted).

## V.    Analysis

Plaintiffs have one claim remaining against Defendant: breach of contract. Plaintiffs contend Defendant breached the insurance policy by failing to fully cover and pay for the damage to Plaintiffs' property. Plaintiffs correctly state the requirements for a breach of contract claim under Florida law: (1) a valid contract; (2) material breach; and (3) damage. *Chalfonte Condo. Apartment Ass'n, Inc. v. QBE Ins. Corp.,* No. 06-81046, 2007 WL 2225972, at *2 (S.D. Fla. 2007) (citing *Cibran Enterprises, Inc. v. BP Products N. Am., Inc.,* 365 F. Supp. 2d 1241, 1254 (S.D. Fla. 2005)).

As a preliminary matter, the parties agree that an insurance policy contract existed between them. But they disagree as to whether there was a material breach of that contract.

A material breach requires a failure to perform that goes to the essence of the contract. *Gelfound v. Metlife Ins. Co. of Conn.,* 998 F. Supp. 2d 1356, 1359 (S.D. Fla. 2014) (citing *Sublime, Inc. v. Boardman's Inc.,* 849 So. 2d 470, 471 (Fla. 4th DCA 2003)).

Under Florida law, an insured seeking to recover under an all-risks policy, such as the policy here, bears the burden of proving that a covered loss occurred at the insured property. The burden is on the insured to prove that the insurance policy covers a claim. *Hudson Ins. Co. v. Double D Mgmt. Co., Inc.,* 768 F. Supp. 1542 (M.D. Fla. 1991).

"In Florida, the insured has the burden of proving facts that bring its claim within an insurance policy's affirmative grant of coverage. *Homeowners Choice Prop. Cas. v. Miguel Maspons*, --- So. 3d ---, 2017 WL 192020, at *1 (Fla 3d DCA Jan. 18, 2017) (citations omitted). "In order to meet this burden under a policy of property damage insurance, the insured must prove (1) that the property harmed or damaged falls within the "insuring clause" of the policy, **and** (2) the loss claimed falls within a second "covered perils" provision contained in each policy." *Id.*

Once the insured shows coverage, the burden shifts to the insurer to prove an exclusion applies to the coverage. *LaFarge Corp. v. Travelers Indem. Co.,* 118 F.3d 1511, 1516 (11th Cir. 1997). If there is an exception to the exclusion, the burden once again is placed on the insured to demonstrate the exception to the exclusion. *Id.*

"Insurance policies may contain exclusionary provisions that exclude certain risks from the scope of coverage, and exclusionary provisions may carve out coverage for losses that ensue from an excluded cause of loss." *Liberty Mut. Fire Ins. Co. v. Martinez*, 158 So. 3d 486, 488 (Fla. 5th DCA 2015) (citing *Swire Pac. Holdings, Inc. v.*

18

*Zurich Ins. Co.*, 845 So. 2d 161, 167-68 (Fla. 2003). "An ensuing loss is a loss that occurs separate from but as a result of an excluded loss." *Id.*

The property here is uncontestably insured property. The parties, however, disagree as to whether Defendant already admitted coverage for the loss under its policy and whether there is evidence to sustain Plaintiffs' claim that the loss was caused by a covered peril and whether there is competent evidence that there was ensuing water damage as a result of the alleged plumbing backup.

A. *Plaintiffs' Summary Judgment Motion*

The Undersigned will first address Plaintiffs' allegation that there are no genuine disputes of material fact that Defendant admitted coverage for the damage to Plaintiffs' property. Plaintiffs state that Defendant "admitted coverage when it found that [Defendant] should pay $104,179.64 in fulfillment of the claim." [ECF No. 111, p. 14]. Plaintiffs then state that "Defendant further confirmed coverage in its Responses to Plaintiffs' Requests for Admissions upon stating that 'ensuing water damage sustained as a result of the subject loss is covered by the subject policy.'" [ECF No. 111, p. 14]. Plaintiffs rely, nearly exclusively, on Mr. Vespi's report and Defendant's original responses to Plaintiffs' requests for admissions. However, as Defendant highlights, there are issues with Plaintiffs' reliance on these documents.

Plaintiffs rely on Defendant's responses to Plaintiffs' requests for admissions to demonstrate that "Defendant has admitted coverage exists for the ensuing damages

19

caused by Plaintiffs' loss as a result of the subject water damage and therefore it is only necessary that a damage amount be determined pursuant to the policy." [ECF No. 111, p. 7]. Specifically, Plaintiffs depend on Defendant's response to "Admit that the damages to the subject property are covered by the insurance policy issued by Defendant to Plaintiffs." Defendant responded with the following language:

> Admitted, only that the ensuing water damage sustained as a result of the subject loss is covered by the subject policy though [Defendant] has not yet determined what amounts are covered due to Plaintiffs' refusal to allow re-inspection of the property and refusal to provide requested documents.

[ECF No. 66-1].

"Once the matter is admitted, Rule 36(b) provides that it is 'conclusively established unless the court on motion permits withdrawal or amendment of the admission.'" *Perez v. Miami-Dade Cty*, 297 F.3d 1255, 1264 (11th Cir. 2002) (citing Fed. R. Civ. P. 36(b)). Defendant, pursuant to Rule 36(b), noticed for a discovery hearing its request for leave to amend its admissions [ECF No. 82] based on information attained during the re-inspection and the Court **granted the request.** [ECF No. 93, p. 8]. Defendant's amended response fully *denies* that particular request for admission. [ECF No. 140-1, p. 3].

Plaintiffs are fully aware of the amended response (and even mention it in a footnote to their summary judgment motion), yet they rely on the original admission to somehow assert that Defendant admitted coverage and that there is no genuine issue of

material fact. Not only does the later response to the request for an admission state the opposite creating a discrepancy in the material facts, but it also *replaced* the original admission and is thus indisputably the operative response.

Additionally, Plaintiffs rely on Mr. Vespi's report to establish that there are no genuine issues of material fact that Defendant admitted coverage and also agreed to the scope of damages and an estimated repair cost. As previously detailed, the parties agree that Mr. Vespi is an insurance adjuster who works for David Morse & Associates and inspected the property in the presence of Rami Boaziz from Stellar. They also agree that he is not a licensed plumber, engineer, general contractor or other licensed professional, nor is he otherwise qualified to inspect sanitary drain lines or any other part of a plumbing system or to render opinions as to causation.

Significantly, the parties also agree that, based on the information available to Mr. Vespi at that time, Mr. Vespi reported to Defendant that the loss was caused by a broken drain line underneath the concrete slab which caused the master bathroom toilet to backup and that "water damage" to the master bathroom door frame and discoloration of the travertine tile was observed. Also, they agree that Mr. Vespi prepared an estimate of the cost to repair the damages to the property in the net amount of $103,179.64.

The parties, however, disagree as to whether this report was an admission by Defendant that the property damage was covered under the policy. In his report, Mr.

Vespi stated that the "loss was caused by a broken drain line under the slab causing a toilet to backup into the bathroom" and that "during our inspection we found water damage to the door frame of the commode room of the master bathroom. Some of the marble tile was also discolored." [ECF No. 111-1].  The report also stated: "We found water damage to the door frame of the master bathroom commode room and some discolored marble tiles. The floor was marked by the plumber . . . to show where the pipe was broken." [ECF No. 111-1].

If Plaintiffs were reviewing that report in a vacuum (and under the assumption that Mr. Vespi could act on behalf of Defendant), then it is understandable how they could conclude that Mr. Vespi's report determined that coverage existed. This is especially true because the report states, "[w]e were instructed to confirm the cause of loss and the extent of damage and prepare an estimate of the damages." [ECF No. 111-1]. However, the report does not exist in a vacuum, as there is other record evidence to consider along with it.

First, the report was created for Defendant and produced to Plaintiffs during the discovery phase of this litigation. Also, Mr. Vespi attested that at no time did he advise Plaintiffs, Mr. Boaziz (Stellar's independent adjuster), or Stellar that there was coverage for the subject claim. [ECF No. 110-8]. Additionally, Defendant provided record evidence that Mr. Vespi is not an employee of Defendant and at no time did Defendant

grant Mr. Vespi or David Morse & Associates the authority to confirm or deny coverage with regard to the subject claim. [ECF Nos. 110-2, p. 3; 110-3, pp. 9-10].

Further, as previously stated, Mr. Vespi is not a licensed plumber and could not independently and competently determine the alleged plumbing issue that caused the damage. Mr. Vespi relied on the information provided by Plaintiffs' independent adjuster, who explained the plumber's findings to Mr. Vespi.

After preparing the report, Mr. Vespi has since stated in an affidavit that he defers to the opinions of Defendant's experts. [ECF No. 110-8]. Further, Mr. Vespi stated in that same affidavit that he "agree[s] that the travertine flooring and the master bathroom door frames were **not damaged** as a result of the reported backup and overflow of the master bathroom toilet, and my assumption that the scuffs and wear and tear damage observed to the master bathroom door frames was caused by water damage was **incorrect.**" [ECF No. 110-8] (emphasis supplied).

This information and its relation to Mr. Vespi's report demonstrates a genuine issue of material fact as to whether Defendant, through Mr. Vespi and his report, determined that the damage to Plaintiffs' property was covered under the policy.

In addition to the highlighted issues concerning Plaintiffs' reliance on these two documents, review of other record evidence reveals genuine issues of material fact concerning whether Defendant admitted coverage. For example, Defendant sent a letter

on June 6, 2016 to Plaintiffs that denied coverage after it completed the re-inspection and had their experts evaluate the property. [ECF No. 110-15].

Also, before Defendant sent that denial letter to Plaintiffs, Defendant sent Plaintiffs other correspondence indicating that Defendant did not agree with the scope of damages or estimated repair cost, requesting documentation that showed Plaintiffs completed repairs related to a prior policy claim, and attempting to coordinate a re-inspection. [ECF No. 10-10].

Finally, Defendant included an affidavit from Ms. Jayme Sutcliffe (the claim examiner responsible for handling Plaintiffs' claim) in support of its summary judgment motion. This affidavit provided further record evidence that (1) no one with authority from Defendant made a coverage determination before the June 6, 2016 denial letter; (2) based on the information derived from the re-inspection, Defendant determined there was no coverage for Plaintiffs' claim; and (3) Defendant sent a denial letter on June 6, 2016 denying coverage and explaining the basis for the denial. [ECF No. 110-2].

Accordingly, the Undersigned finds that there are genuine issues of material fact as to whether Defendant breached the contract. Plaintiffs' claim that Defendant already admitted coverage is rebutted by record evidence. Whether a breach occurred still needs to be determined by the trier of fact. Therefore, the Undersigned will not address Plaintiffs' additional assertions that the Court should at least compel payment of

$104,179.64 because it was allegedly agreed to in Mr. Vespi's report, nor will I grant summary judgment as to coverage and designate as ripe for trial only the scope of additional damages.

B. *Defendant's Summary Judgment Motion*

Defendant first contends the Court should grant summary judgment in its favor because the undisputed record evidence establishes that the alleged plumbing backup was not caused by a covered peril under the policy. Specifically, Defendant asserts "[t]here is no record evidence of any kind to substantiate a 'break' in the master bathroom drain line caused the master bathroom toilet to backup and overflow." [ECF No. 109, p. 9].

As Defendant explains, there is a significant difference concerning coverage afforded under the policy between a "break" and an installation defect. If there is indeed a "break," then the "policy may potentially provide coverage to access a broken drain line that needs to be repaired." [ECF No. 110-2, p. 4]. Defendant emphasizes that the burden is on the insured to prove that the insurance policy covers a claim against it. *See Hudson Ins. Co. v. Double D Mgmt. Co., Inc.*, 768 F. Supp. 1542 (M.D. Fla. 1991). Once the insured shows coverage, the burden shifts to the insurer to prove an exclusion applies to the coverage. *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1516 (11th Cir. 1997).

25

Defendant highlights various portions of record evidence demonstrating the lack of a break. For example, Defendant's expert, Mr. Donald Dunn, attested that he conducted a video examination of the drain line and determined that there were no confirmable defects in the pipe. [ECF No. 110-13, p. 3]. Instead, Mr. Dunn found an improperly aligned transition from the PVC pipe to the original cast-iron pipe. [ECF No. 110-13 p. 3-4]. Ultimately, his professional opinion was that the loss of pitch was the result of improper installation.

Plaintiffs, in their opposition response, minimally respond to Defendant's argument that there is a lack of evidence demonstrating a covered peril under the policy. Instead, Plaintiffs contend that Defendant is confusing the Court with the different categories of damage: "One category relates to the pipe itself and whether Defendant has a duty to repair the pipe itself. The other category deals with ensuing damages as a result of the back-up which includes damage to flooring and woodwork." [ECF No. 141, p. 5]. Plaintiffs, however, then proceed to oppose those arguments made against coverage to ensuing damages but do not refute those made in connection with the other category.

The Undersigned finds that Plaintiffs did only a minimal and wholly conclusory job of responding to Defendant's argument. However, they did barely enough to escape summary judgment on that point because review of the record evidence demonstrates a genuine dispute as to whether a break existed.

Mr. Vespi's report specifically mentions a break: "the plumber only ran a camera to locate the break," "[t]his loss was caused by a broken drain line," and "[t]he floor was marked by the plumber with blue tape to show where the pipe was broken." [ECF No. 111-1].

There is evidence to challenge Mr. Vespi's comment about a "break" in his report. For example, Mr. Boaziz testified at his deposition that the All 4 One plumber informed him "there was a *defect* in the plumbing line, which allowed for water to back up from the toilet. And the only way to repair the issue with the line was to go ahead and break the floors in the house to repair the line." [ECF No. 135-1, p. 66]. When asked whether he ever informed Mr. Vespi that there was a break in the line, he testified that he did not believe he said that the word "break" and told Mr. Vespi there was a *defect* in the line. [ECF No. 135-1, p. 66].

Further, Mrs. Berkower testified that she was not aware it was reported to Defendant that there was a break in the line. [ECF No. 134-1, p. 70]. She also testified that Mr. Boaziz did not advise her during the inspection that there was a break in the plumbing line. [ECF No. 134-1, p. 70].

Additionally, All 4 One Plumbing, Inc.'s report does not mention a "break" in the master bathroom drain line. [ECF Nos. 110; 166-1]. Rather, All 4 One's report noted that a video camera inspection of the master bathroom drain line revealed a "sag" in the line. [ECF Nos. 110; 166-1]. The corporate representative for All 4 One testified that the

27

plumbing report would have included any breaks the plumber found in the plumbing line. [ECF No. 131-7, pp. 56-57, 80-81].

Although there is undoubtedly some evidence showing a "break," ultimately the report states that the "loss was caused by a *broken* drain line." [ECF No. 135-1, p. 66] (emphasis supplied). Defendant challenges the report by relying on other evidence, but it is up to the jury to weigh the evidence and determine if there was a break and a covered peril for which Defendant needed to provide coverage.

Additionally, Defendant requests that the Court enter summary judgment in its favor because there is no competent, admissible record evidence of any ensuing water damage to the property which is consistent with the alleged backup and overflow of the master bathroom toilet. To be sure, Defendant "does not dispute that the subject policy could (subject to the terms and conditions of the policy) provide coverage for the ensuing water damage caused by a plumbing backup such as the one reported by the Plaintiffs *if the backup were to in fact cause physical damage to the property.*" [ECF No. 181, p. 2] (emphasis in original).

Defendant contends that, other than Plaintiffs' own testimony, Plaintiffs offer no competent evidence to substantiate that the ensuing damages came from the backup of water from the master bathroom toilet. Further, Defendant contends that Plaintiffs even fail to provide competent evidence demonstrating that the claimed damages are ones that cannot simply be cleaned or that there are even water damages.

Defendant relies on their experts to conclude that the alleged damages to Plaintiffs' property are not consistent with a backup and overflow of a toilet. Their experts also found that the alleged damages were not caused by water. Instead, the alleged damages, according to Defendant's experts, were from long-term wear and tear, poor maintenance, and inherent variations in shade, color and characteristics of the flooring.

Additionally, Mr. Dunn, the plumbing expert, reviewed Mrs. Berkower's deposition testimony concerning various bathroom appliances flooding at once and determined that, based on the physical height, depth and the layout of the plumbing fixtures, combined with the characteristics of fluid dynamics, the water could not have flooded the way Mrs. Berkower described.

Although the expert opinions indeed cast significant doubt on whether the damages sustained to Plaintiffs' property were ensuing damages and even call into question whether water damages even exist on the property, ultimately the record evidence creates genuine issues of a material fact.

For example, Mr. and Mrs. Berkower each testified at their depositions that the house was damaged by the overflowing toilet. Mrs. Berkower explained that she saw the water simultaneously overflowing from the toilet, tub, shower and sink and that it was "unstoppable." [ECF No. 110-4]. They described in detail where the water spread

to, what the water looked like, where the water was coming from, the conditions of the house, and the damages sustained. [ECF Nos. 110-4; 110-16; 132-1].

Additionally, Plaintiffs rely on Mr. Vespi's report. Although the same analysis applies to the report as previously described when addressing Plaintiffs' summary judgment motion, the report ultimately does include a finding by Mr. Vespi that, based on the information he had at the time, there were damages sustained to the property and the estimated repairs would cost $104,179.64. Although Mr. Vespi subsequently changed his opinion afterward, but the initial report itself supports Plaintiffs' position. A jury is entitled to explore the reasons for Mr. Vespi's change in position.

Plaintiffs also rely on Defendant's original responses to their requests for admissions. However, the Undersigned is not persuaded that this evidence is conclusive because, as explained above, the admissions were appropriately amended with leave of court.

Nevertheless, despite Defendant's challenges to the sufficiency and the quantity of Plaintiffs' record evidence, there is still enough in the record to create genuine issues of material fact.  It is up to the jury to weigh them.

The Undersigned understands that Plaintiffs and Defendant claim that there are no genuine issues of material fact which would preclude the Court from granting summary judgment in their favor. But there are in fact disputes remaining and neither party is entitled to summary judgment on fact-intensive questions concerning whether

Defendant admitted coverage and refused to pay and whether there were damages to the property caused by the overflow of water.

Interestingly, despite having filed their own summary judgment motion alleging that Defendant already admitted a covered loss, Plaintiffs state in their opposition response to Defendant's summary judgment motion the following: "Defendant and Plaintiffs disagree as to almost every material fact in this action including the most basic fact of all: whether or not the loss occurred." [ECF No. 141, p. 2]. The Undersigned agrees with this statement.

**VI.     Conclusion**

The Undersigned **denies** Plaintiffs' summary judgment and **denies** Defendant's summary judgment motion. Additionally, the Undersigned **directs** Plaintiffs' counsel to pay $1,750 in attorney's fees by April 11, 2017.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on April 4, 2017.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

<u>**Copies furnished to**</u>:
The Honorable Joan A. Lenard
All Counsel of Record